Number 06-1431 Berger v. Rossignol Good afternoon, both. Good afternoon, Your Honor. Mr. Slobodin, we're ready to hear from you as soon as you can be ready. I'm ready. Good afternoon. Welcome back to the court. Please proceed. Good afternoon. May it please this honorable court, in this case, deficient preliminary infringement contentions for file length in violation of the rules of the Federal Board of Justice. I thought they weren't filed. I thought they were rejected for filing. They were not rejected. They were never rejected. They were just filed late. You're talking about the original contentions or the amended contentions? The original. I beg your pardon. Okay. You're on the original contentions. Okay. So, in attempting to take advantage of this, the defendant, Rossignol, promptly filed a motion for summary judgment contending that plaintiffs admitted non-infringement based on a failure to meet the so-called rotate limitation of Claim 1 of the 530 pact. Twenty-two days after this, after being made aware of this mistake by the filing of this motion for summary judgment, in putting a 4 in the preliminary infringement contentions claim chart, which did not belong, plaintiffs advised the defense counsel of its intent to file amended preliminary infringement contentions. Isn't the issue whether Judge Breyer, the trial judge, abused his discretion in refusing to allow you to amend the infringement contentions? That's one issue, which I'm getting to. But isn't that the central issue in this appeal? I don't think it's a central issue. I think a more important mistake was— You can win even if we take the amended contentions as properly rejected? Well, if you take—well, I think they should not be taken. However, the failure to do a claim construction was also a reversible error, which I'm also hoping to get to. Are those the two arguments? One, that he abused his discretion, and two, that he didn't do a claim construction? Well, the third argument would be that on the merits, clearly, that the rotate limitation was met, and the plaintiffs were denied a trial on the merits. And there's a lot of reasons for that, and I've got some sort of order here. But under O2 micro, you're stuck on the summary judgment if you couldn't amend your infringement contentions. Well, under O2 micro, it was a lot different, because under O2 micro, it was the final infringement contentions. And we would have, after a claim—I'm skipping around here to try to answer your question—but we would have the absolute right to amend the preliminary infringement contentions after a claim construction order was done. No, only to address what was changed by the claim construction. Yes, if we had good cause to do so. But in this case, if it was done, then we could have addressed it. But I think those rules were written, because they're called preliminary infringement contentions, to give you the opportunity to have a claim construction hearing, and a claim construction order, and then have 30 days without leave of court to amend it, based on what you say. But the text of ours holds that you're entitled to a Markman hearing, regardless of the scope and nature of infringement contentions you file. Well, every case that I've ever seen, and we've researched this pretty thoroughly, and we've cited them in our brief, and even the cases they've cited in their brief, say that in order to determine the issue of infringement, a two-step analysis is required. First, you have to construe the claim, and then you have to apply the proper— Suppose the two sides agree on the meaning of every word in an asserted claim. But that didn't happen. You still have to have a Markman hearing according to your— That is a moot point here, because that is not what happened in this case. Both sides said that certain claim terms should have been construed. We filed a document under the local rules listing which claim terms had to have been construed. But you're not entitled to a Markman hearing, though. I'm sorry? There's no mandatory requirement for— No, you can have a summary judgment motion and not have a Markman hearing, but in the context of a summary judgment hearing, you have to do a claim construction. What's the difference here with respect to the claim term lower attachment? What's the difference in interpretations? Well, the difference in interpretation is what we're saying, whether there's a difference or not. We're saying that the term lower attachment—and it's in the appendix there, how we construed it in terms of the local rules. We're saying that, among other things, it has to be attached to the board, and it has to rotate with reference to the upper attachment. But what's the difference between you and Rossignol about that? Well, I don't know if they have—in Rossignol, I don't think they put that part in there about that it has to rotate in reference to the upper attachment. But they just said it has to be attached, as I recall. However, once you see that, then it's obvious that this fourth part does not fulfill that claim limitation. So then we would have amended, and we would have been where we belong. Well, one of the problems is that there was, as I recall, about three months between when the preliminary contentions were submitted and when they were sought to be amended. Yes, Your Honor. However, the mistake was not apparent until Rossignol filed a motion for summary judgment on February 21. Well, how can it be the mistake wasn't apparent when the contentions were in the complaint? No, those preliminary infringement contentions were not in the complaint. The theory of infringement was in the complaint. I don't think the theory of— The claims and the patents were in the complaint. Yes. So what got omitted from the preliminary infringement contentions was stuff that was in the complaint. So how can it be that it was undetectable? All you had to do was look at the complaint and look at your draft of infringement, preliminary infringement contentions, and you could see that things were left out. We're talking about two different things. We're talking about the omission of the other patent, not the 530. Well, I'm talking about 560. And that was not put in the—that's why I said they were deficient. It was not put in there. And that—the attorney that was handling it before me did that for whatever reason I'm not sure about. Well, that's exactly the point. For whatever reason we're not sure. Your affidavits, your declarations didn't explain how this mistake came about, nor did they explain why it should be excused, nor did they explain why it took so long to correct it. Well, under the 02 micro, the main issue would be diligence. And with regard to the mistake of a 4, a numeral 4, within 22 days, the day after I came into the case, I notified counsel that we intended to try to amend these preliminary infringement contentions. I told them I'm going to send you a set of them. But it didn't say why it took 30 days. Actually, the actual amendment took 30 days from the time that the summary judgment motion was filed. It doesn't explain it. 30 days is diligence. I mean, there's no case where—first of all, there's no case where preliminary infringement contentions were not allowed to be amended before any claim construction hearing at all. Secondly, every case where there was a denial was after they had final infringement contentions, not preliminary infringement contentions. Well, maybe this will be the first one. I'm sorry? Maybe this will be the first one that will deal with preliminary contentions as opposed to final contentions. Yes, and it would be the first one where diligence was 30 days or so. Well, you say 30 days, but you're assuming that you're not responsible for the dereliction of prior counsel. I mean, normally the client is bound by whatever his chosen lawyers, however many there are in series, do, any or all of them do. So the delay that's chargeable against your client isn't 30 days, it's 3 months. Well, Your Honor, the delay can only be because, you know, the Oju case talks about discovery and how much time you have after discovery. Here the discovery of the mistake could not have been until after the service on February 21st of last year. How do we know that? How do we know that? There's no—we are given no information as to how the mistake occurred or why it wasn't discovered at all. We can presume that. Number one, if he knew the mistake, he wouldn't have filed the contentions as they were. So sometime between the time he filed the mistake and the time that he became aware of it, he became aware. And the triggering function that makes sense would be the filing of the motion for summary judgment. Now last night, if I may, I looked at these things, and I've looked at them many times, and I came up with something. And this is on—if I may, Your Honor, this is on A241 of Taft 12, and this is the original preliminary infringement contentions. And it's on page A2-41. And it says, a lower attachment connectable to a board. And next to that on the right, it says 5B4, 17 connectable to board 2. But if you look at 19 on the next page, it says 5A attached to 5B, B of 4, 17. And if you look at claim 31 on the next page, A243, it says 5A attached to 5B, B of 4, 17. And if you look at under claim 1, the fourth line down on the right, it says 5A attached to 5B, B of 4, F-O-R-K, 17. I think that's a typo. That should have been 4. And I think in the first one, 5B should have been B of 4, like in all the other places. And that explains— Well, that's fascinating. But where do your affidavits say it's a typo? Well, the affidavits say it was a mistake. And to punish the plaintiffs where they have a good case on this issue by dismissing the case is a severe sanction, Your Honor. And this would be the first time where preliminary infringement contentions could not be amended. And the court did not do claim construction, and that is fatal. What do you mean that's fatal? Under what authority is it fatal that there wasn't claim construction? Well, because every case says that in order to determine—and I could go from any case— Of course, we say it often. It's dicta. It's dicta in those cases. A two-step analysis is required. Not for purposes of whether to allow amendment to preliminary infringement contention. That's on the merits, if you get to the merits, as a factual matter, whether infringement has been proven. Not for that purpose, but the purpose of determining under summary judgment whether infringement has been proven. And I've got the actual binding here. Well, except that in Northern California, it's not enough to be able to resist summary judgment under national rules. You have to also survive under the local rules, which impose additional requirements. Well, here the local rule trumped the FRCP Rule 56, and it should not have under these circumstances. It didn't trump it. They just both apply, and you may have met the one, but you didn't meet the other, and you're required to meet both. Well, the summary judgment opposition clearly showed that summary judgment should not have been granted. As a matter of fact, it should have been granted in our favor that there was infringement on our cross-motion. This is the hold-down disk, which is 5B. This is the alignment plate, the white part, which is 17, and this whole thing here is 4. And these are held by screws down to the snowboard, and these do not rotate. They stay with the snowboard, and the upper attachment rotates. Whereas 4, the rotatable disk, rotates so you can change the position of the rider's boot on the snowboard. Now, for anyone to think that 4 would be part of the lower attachment, which is simply something that attaches to the snowboard, it is just ridiculous, because nobody would do that. It's an obvious mistake, and we rely on it. Well, if it was obvious, why wasn't it immediately corrected? Well, because the thing was sent in. I mean, this is how lawyers work. I guess they send something in, and they turn to something else. You know, it should have been reviewed to look for mistakes. It wasn't. It was a mistake. And you don't look at it the next day and say, gee, I sent something in the day before. Let me look at it and see if I made mistakes in it. I mean, that's just not the way the practical world works here. What I'm saying is I'm really saying that a terrible injustice was done because we have a case on the merits. It was early stages. We moved within three months from the time they were filed, as you say, Judge Michel. And we also moved within 34 days from the time the mistake was discovered to correct it. And clearly, the rotation limitation is met. All right. I think we have your case clearly, and you'll have a minute and a half for rebuttal. Thank you. Thank you, sir. Mr. Walker. Thank you, Your Honor. May it please the Court. Judge Breyer recognized in his order that this motion to amend these preliminary contentions wasn't really about correcting errors. It was about retracting concessions that had been made. Well, how do we know? How do we know? Because they did it in response to a summary judgment motion. That doesn't mean that it was not a typographical error in the first place. The point is we don't really know. Well, we know it wasn't a typographical error of just including four. They want to say we just included the numeral four. They seem to always want to ignore, when they go to the infringement, their claim chart, what they said with respect to dependent claim 27, where they said not just numeral four, lower attachment includes numeral four. You're doing the same thing they're doing. You're speculating about what happened here. That's not particularly useful for either side. The question is what's the record show about it, and you can't make presumptions or inferences. They had a certain amount of time. Judge Breyer found that they weren't diligent. The question is whether that's an abuse of discretion. Maybe on the face of it, they're saying it looks pretty harsh because it was an early stage of the proceeding. The delay wasn't that long. The mistake didn't result in a massive diversion of resources. It didn't delay a trial date. They're saying under these circumstances, it's an abuse of discretion. Well, let me go back to the record, Your Honor, because one thing that is absolutely clear from this case is that they had years to develop their infringement contentions from the time. They had this very binding, at least by May of 1999. When it comes to diligence, that's more than just promptness in moving to amend something. It requires diligence ab initio. Well, how did they know that the binding had not been changed by Resnick? Was it still the same binding seven years later? The same binding, Your Honor. Did they know that? Did they know that? I believe they knew that. That's still not part of the record, though, is it? I mean, they waited seven years before filing a lawsuit after the preliminary discussions. But how did they know that the binding had not been changed in design or otherwise by Rosenau? I don't have that aspect of the record at my fingertips, I will confess. But I do believe that it is in the record, possibly in Mr. Marmonnier's declaration. How do we know that Mr. Slobodin's predecessor had the apparatus starting in 1999, I thought you said? How do we know that? We know that from letters that were – there was correspondence between Rosenau and the Bergers, and there is a letter in the record in the appendix showing that we sent the device to them in May of 1999 so that they would clearly have the device. And those letters are all part of the summary judgment record in front of Judge Breyer? Yes, Your Honor. So we have it in the appendix? Yes, Your Honor.  What would have been so terrible, Your Honor, is that it would make a mockery of preliminary infringement contentions. Because – no, I mean that with all seriousness, Your Honor. There was no trial date, right? There had not been a trial date. When discovery started? Yes, Your Honor. Rosenau had served discovery, and in fact it had to compel responses to its written discovery, as well as moving to compel the initial disclosures, having raised with the court their failure to provide us with initial disclosures, and moving to compel the infringement. Any depositions taken yet? There had not been any depositions. So early stage of discovery would be a fair way to characterize it, wouldn't it? In terms of discovery, possibly so. But the dispute was in the range of seven to eight years, and the case had been pending for nearly a year when Judge Breyer ruled. And as the court knows, in many courthouses, most cases are disposed of in that length of time. And the reason the case had gone so long is because they didn't press the case. They filed it, they didn't serve the complaint for three months. But there's no requirement that one serve the complaint within two weeks or any other interval, right? No, you're correct, Your Honor. So it's not unlawful for them, or in violation of some kind of rule or regulation or case law or anything, for them to file a complaint and not serve it for X months? Not unlawful. Our point, Your Honor, is that when they submitted those preliminary infringement contentions, and under this court's rules, the Northern District of California's rules, those preliminary infringement contentions are to be taken very seriously, both of the Berger's counsel practice in that jurisdiction. They know those rules well. And our point is that with all the time they had to prepare them, including serving them a month late and six months after they filed suit, if they have errors, and we don't believe they were errors, but if they were errors... Are you alleging prejudice? Are you alleging that you were prejudiced by the delay in the filing of their amended contentions? We were prejudiced in that we relied on those contentions, not in the delay. We moved to compel the contentions, and in that motion we asked for dismissal. We asked for a dismissal sanction. But when they then, in response, gave us the infringement contentions, we dropped that motion. But what we are saying we're prejudiced about is... But the lack of diligence seemed to come mainly from the delay. So I'm focused on the delay that Judge Breyer seemed to find practically dispositive by itself to show lack of diligence, and therefore they're out of court. And so I'm trying to evaluate, well, what were the consequences of that delay? Whether we measure 34 days or three months of delay, how were you hurt? How were you prejudiced by the delay? Because we relied on those contentions in putting together detailed invalidity contentions and in preparing a detailed and thorough motion for summary judgment. But you could have been made whole, I would suppose, if you were given some extra time to make revisions in light of their amended contentions had they been accepted. But the issue here, bottom line, isn't how to make Rosendale whole. The issue is, did they establish good cause for amending those contentions? Well, was the court prejudiced or harmed somehow by the delay of one month or three, however we want to measure it? Judge Breyer believed he was because in his order, he said that they have continually delayed in this case, and now they're trying to have yet further delay. That's not responsive to my question. What harm did the court suffer in the 90-day delay period? All I can tell you is what he said, and he said that this would further delay. If he granted the motion... Delay is delay. That's beyond argument. I'm only asking about the consequences of delay. If it cost you a lot of money, you have something to complain about, perhaps. If it cost the court a lot of extra work, the court has something to complain about, perhaps. But I'm trying to find some concrete harm from the delay. And he believed that it would unduly further delay a case that had already been delayed. But he has lots of other cases. It's not like he's sitting on his hands for three weeks because he can't put this case on trial or have a Markman hearing or have oral arguments on summary judgment or whatever else he might have done. He's got hundreds of other cases to do, so how is he hurt? He felt that it would unduly further delay the case. I'm sorry to give the same answer. The other thing is, of course, there is an issue of administrative and judicial regularity. What about the motion that he denied on Patent 569? Is that prejudicial to you by making it at that particular point in time? It was originally in the complaint. The complaint alleged infringement of both 530 and 569. They were. So you were on notice of both patents. Right. 530 was the only one in a preliminary claim discussion. 569 was not made until later. Would you have been prejudiced by admission of that 569 claim? Certainly. How? Because it was, by the very fact that it was pleaded, but then when it came to their infringement contentions, it was clear from their infringement contentions that they did not intend to assert. Would you mean you had done no research or analysis between the filing of the complaint and the filing of the contentions on the second patent? Certainly we had. Of course. So then how are you hurt? You did the homework anyway. Because when we prepared the invalidity contentions, when we filed the summary judgment motion. They would have to be altered. I agree with you there. It cost you some time, but it's not like you were blindsided by a new allegation coming out of the blue. The allegation of the second patent was there from day one, as Judge Gallarza points out. It was right in the complaint. And you agree you worked on it. Some. Your answer to that is they're not raising the 569. They were not. That's right. In fact, it was a concession that they were not going to assert it. In fact, I would say. No, no, no, no, no. On this appeal, they're not raising the 569. Am I mistaken about that? I think they included it in their appeal. I thought they were only complaining about the refusal to amend with respect to the 530. Well, I would leave that to Mr. Slobodin. But I believe the answer. Well, you've read that. It was included in their motion to amend their contentions that were denied, and they appealed the denial of the motion to amend the contentions. Yeah, but the question is, did they brief the denial with respect to the 569? I didn't think they did. They did not brief it. So maybe preserved below but abandoned here by omission from the brief. If so, I would defer. Let me ask you one further question regarding the counterclaims on 569. Did the court dismiss those counterclaims? No, Your Honor. So they're still extended? No. You dropped them, didn't you? We did not drop them. Our point was that they had pled both patents. We had counterclaimed with respect to all claims of both patents. In his order, he simply recognized that they had conceded non-infringement of the 569 patent and the non-assertive claims of the 530 patent so that all he had to decide was whether the assertive claims of the 530 patent are infringed or not infringed. They didn't concede the 569 because they did present some contentions of infringement and claim construction, which the court did not allow to be amended. Right, but if they are not permitted to amend, then the 569 is not part of their infringement contentions, and the judge did not allow them to amend. So his ultimate judgment, which was just judgment in favor of Rosenwald and against the Burgers and dismissal for mootness of only the invalidity and equitable estoppel claims, means that on the issue of infringement, his judgment stands as a ruling for Rosenwald on both patents, all claims of both patents. Even though the counterclaims are still existing and not dismissed under the 569 and there's no final judgment? I said they were not dismissed. My point is that they're encompassed by his judgment in Rosenwald's favor. So he ruled on those counterclaims? By ruling, by granting judgment of non-infringement in favor of Rosenwald, yes, Your Honor. My point would be that as a matter of law, that encompasses all assertive claims of both pleaded patents and that his dismissal of counterclaims was only with reference to the invalidity and equitable estoppel claims. I think it's pretty hard to read his summary judgment motion as addressing the 569. He says that as the 530 patent is the only patent now at issue, judgment will be entered in favor of the family. My point is, Your Honor, you're correct. His decision only addressed the assertive claims of the 530 patent because they had taken the other claims that they had conceded non-infringement of those by not including them in their infringement contentions. So all he needed to address was the assertive claims. Let me ask you one last question. Yes, Your Honor. You've worked with these rules in the Northern District. Isn't it the case that there has to be some reasonableness in the application of them that they can't be unduly strict? I mean, they're not going to work if they're unduly strict, will they? Your Honor, they're not unduly strict. No, that's not my question. I know in this case you don't think that they were applied in an unduly strict way. I'm saying in general there has to be some play in the joints. There has to be some reasonableness in the application of these rules, right? I would agree with that as a generality, and I think this court said as much in the O2 micro case and probably other cases. But there's no reason to draw a line, as Mr. Slobodin would suggest, between preliminary contentions and final contentions. Everybody's on notice that when you submit those preliminary contentions, those may turn out to be your final contentions because there's only two possibilities. There's either a claim construction ruling that on good faith permits you to change them, or you convince the court that you can show good cause to amend them. But for that, those preliminary contentions are your final contentions. The local rules say that. Rule 3-6 says that. And Rule 3-7, the good cause rule, says on its face, amendment of preliminary contentions and final contentions. You'll only amend them on order of court for good cause shown. So there's no reason to distinguish between preliminary and final contentions for this purpose. All right. Thank you, Mr. Walker. Mr. Slobodin, you have a minute and a half for rebuttal. Mr. Brenner, first of all, Mr. Allen, there's no evidence that he had the actual binding. Secondly, on prejudice, the two paragraphs of the 25-page brief on this issue of rotate limitation, Judge Ilson, in a recent case, said there's no prejudice where they moved summary judgment on the preliminary and finishing contentions because they took the chance. They were preliminary contentions. The second patent is in the case. We said in our conclusion, the court's judgment, if any, would finish in the reverse. Will we have the letter? Do we have the Ilson opinion that you're referring to? Well, I have that in the case. But I think we cited it in our brief. You cited it in your brief? Yes, I think we did. All right. We've got the brief. Where do you brief the question about the 569? I know it's in the conclusion of the brief. Well, we briefed it on the basis that we should have been allowed to file the amended contentions, basically. That's where we briefed it. So where is the discussion of the 569? Because it's quite a different question as to the 569. That doesn't depend, does it, on the question of whether the 4 was in there or not? No. Wait. The 569 is not mentioned at all in the infringement contentions. That's the problem originally. The 569 was not covered, and it should have been covered. And also, we stipulated that if the- But where does the brief talk about diligence in amending with respect to the 569? I'm not sure that it talks about it in that sense, but we said that it's there not to allow our- It's only mentioned as part of the conclusion. It's the only reference to the 569 patent that occurs. Is that correct? It was mentioned in the complaint. Well, it was mentioned in the complaint, but I'm saying in the brief. Oh, in the brief? Plaintiff's proposed amendment picks without the 569, or that's the conclusion statement. Well, basically, we're only saying that we should have been allowed to submit the amended PICs based on all the circumstances, including the time frame that was early in the case and everything else. Now, does the judgment issued by the court dismiss the counterclaims on the 569 patent? Yes, because the judgment, the way I read it, it said dismissal of counterclaims. And specifically, it talked about two counterclaims, but the judgment itself said dismissal of counterclaims, and that was good enough for me. All right, we thank both counsel. We'll take the case under review. Thank you.